# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

NEXLEARN, LLC,

    *Plaintiff,*

vs.

ALLEN INTERACTIONS, INC.,

    *Defendant.*

Case No. 15-CV-01294-EFM-KGG

## MEMORANDUM AND ORDER

    Plaintiff Nexlearn, LLC ("Nexlearn") brings this action against Defendant Allen Interactions, Inc. ("Allen") asserting claims of patent infringement and breach of contract. Nexlearn's claims arise out of Allen's alleged misuse of Nexlearn's confidential information to create and sell a learning simulation technology named "ZebraZapps." Currently before the Court is Allen's Motion to Dismiss (Doc. 20). Allen asks the Court to dismiss this case for lack of personal jurisdiction and for failure to state a claim under which relief may be granted. Because the Court finds that it does not have personal jurisdiction over Allen, the Court grants Allen's motion.

## I.     Factual and Procedural Background[1]

**The Parties' Relationship and Allen's Contacts with Kansas**

Nexlearn is a Kansas limited liability company with its principal place of business in Wichita, Kansas. NexLearn is a leading provider of immersive learning technology. It sells a social simulation technology, called "Simwriter," that has won numerous awards. Client users of SimWriter include Harvard Business Publishing, Koch Industries, Oracle, UBS, BMS, FDIC, FRB, and other companies, government agencies, and academic institutions.

Allen is a Minnesota corporation with its principal place of business in Mendota Heights, Minnesota. Allen's business directly competes with Nexlearn. After learning of the trial release of the next generation SimWriter software, Allen approached Nexlearn's president at a trade show and expressed an interest in purchasing the software to evaluate the technology. The parties subsequently entered into a Mutual Non-Disclosure Agreement ("NDA") dated February 10, 2009. The NDA contains a choice of law provision that states the agreement will be governed by Kansas law.

After Allen executed the NDA, Nexlearn gave it unfettered access to the trial version of the next generation SimWriter. To use the trial version, Allen was required to agree to an End-User License Agreement ("EULA"). The EULA contains the following choice of law and venue provision:

> This Agreement and any disputes arising out of related to this Agreement or the Product shall be governed by the laws of the State of Kansas, United States of America, without regard to conflict of laws principles. . . . [A]ny dispute arising out of or related to this Agreement or the Product must be brought exclusively in a court sitting in Wichita, Kansas, USA, except that Nexlearn may seek to enforce

---

[1] Drawing all reasonable inferences in favor of Plaintiff, the facts are taken from the Complaint, its attached exhibit, and the declarations and exhibits attached to the parties' briefs.

> the judgment or orders of such courts and to obtain temporary remedies in any court of competent jurisdiction.

Allen accessed the trial version at least four times and the data it accessed was housed on servers located in Kansas. After reviewing the trial version, Allen informed NexLearn that it was no longer interested in pursuing a deal with it.

In 2011, Allen launched its own simulation authoring tool call "ZebraZapps," which Nexlearn alleges contains functions that mimic key features of the SimWriter trial version. For example, ZebraZapps includes a "wiring" feature that allows its developers to create branching social scenarios featuring characters that represent real people that are consequence-based and driven by the decisions an end-user makes during the scenario. Nexlearn claims that the wiring feature directly mimics several features of the SimWriter confidential demo, including conditional branching, consequence-based possibilities, and the ability to create a plurality of responses.

Allen owns and operates the website ZebraZapps.info. Visitors using this website can learn about ZebraZapps, contact Allen about the product, and purchase and download the product. When purchasers or subscribers are asked to provide their credit card information, there is a dropdown menu available in the billing address section that allows Kansas residents to select "Kansas."

Since launching ZebraZapps, Allen has emailed two Nexlearn employees who reside in Kansas, providing them information about the product and inviting them to attend webinars and training sessions about it. The emails also provided a link to the ZebraZapps.info website. Allen sent the emails to the Nexlearn employees because the employees were included in Allen's "lead" database. This database includes anyone who has expressed interest in Allen's products

or services.  Allen's marketing team sends periodic email blasts to everyone in Allen's lead database.

Based on Allen's records of sales by customer from state to state, over the past five years Allen's total revenue from sales to Kansas customers was $54,250.  This revenue was from a single sale to a single customer and was unrelated to the ZebraZapps product.  This sale represents approximately one-tenth of one percent of Allen's revenue during the previous five-year period.

Allen is also involved with the Association for Talent Development ("ATD"), an industry trade association.  Approximately 350 of ATD's members are from Kansas.  Allen has presented in at least six ATD conferences.  ATD also publishes a magazine that it sends to its members, including those in Kansas.  Allen advertises in ATD's magazine, and at the bottom of its April 2014 advertisement, Allen included the URL of its website, alleninteractions.com.  Allen advertises the ZebraZapps product on the alleninteractions.com website and provides a link to ZebraZapps.info on it.

**NexLearn's Patent and Filing of this Lawsuit**

On August 5, 2014, U.S. Patent No. 8,798,522 ("the '522 Patent"), titled "Simulation Authoring Tool," issued to Nexlearn.  According to Nexlearn, this patent covers aspects of the SimWriter trial technology that Allen previously accessed and used to create the ZebraZapps product.  On September 24, 2014, Nexlearn filed this suit alleging that Allen's ZebraZapps product infringes the '522 Patent and that Allen breached the NDA by misusing Nexlearn's confidential information.  Allen subsequently filed a Motion to Dismiss, which is currently before the Court.

## II.     Legal Standard

### A.     Motion to Dismiss for Lack of Personal Jurisdiction

"The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on the pleadings (with attachments) and affidavits, that burden can be met with a prima facie showing."[2] The Court accepts as true all well pleaded, non-conclusory facts alleged in the plaintiff's complaint, and all factual disputes are resolved in the plaintiff's favor.[3]

The Court of Appeals for the Federal Circuit has held that Federal Circuit law governs the personal jurisdiction issue for claims of patent infringement and patent invalidity "because the jurisdictional issue is intimately involved with the substance of patent laws."[4] For other claims that are brought in the same action but are not related to patent infringement or invalidity, the personal jurisdiction issue is governed by regional circuit law.[5]

Under Federal Circuit law, the party seeking to establish personal jurisdiction over a non-resident defendant must make two showings.[6] First, the party must show that jurisdiction is legitimate under the state's long arm statute.[7] Second, it must show that jurisdiction does not

---

[2] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

[3] *Id.*

[4] *Autogenomics v. Oxford Gene, Tech., Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (quoting *Avocent v. Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008) (internal quotation marks omitted).

[5] *See Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) (noting that Ninth Circuit law governed the personal jurisdiction issue with respect to the plaintiff's misappropriation of trade secrets and breach of contract claim).

[6] *Patent Rights Prot. Grp., LLC v. Video Gaming Tech., Inc.*, 603 F.3d 1364, 1368 (Fed. Cir. 2010).

[7] *Id.* (citing Fed. R. Civ. P. 4(k)(1)(A)).

offend the Due Process Clause of the Fourteenth Amendment.[8] The Kansas Supreme Court has interpreted Kansas' long-arm statute to extend jurisdiction to the fullest extent allowed by the Due Process Clause of the Fourteenth Amendment.[9] Thus, the only inquiry the Court needs to make in this case is the due process analysis.[10]

**B.     Motion to Dismiss for Failure to State a Claim**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim where the plaintiff has failed to state a claim upon which relief can be granted. Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[11] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[12] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[13]

### III.     Analysis

**A.     Motion to Dismiss for Lack of Personal Jurisdiction**

NexLearn asserts two claims in this case: one for patent infringement and one for breach of contract. The Court will look to Federal Circuit precedent for the patent infringement claim.

---

[8] *Id.* at 1369 (citing *Avocent*, 552 F.3d at 1329).

[9] *Merriman v. Crompton Corp.*, 282 Kan. 433, 459, 146 P.3d 162, 179 (Kan. 2006).

[10] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010).

[11] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 566 U.S. at 556).

[13] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2).

-7-

However, with regard to the breach of contract claim, NexLearn asserts that this Court has supplemental jurisdiction over it under 28 U.S.C. § 1367 because it goes "hand-in-hand" with the patent infringement claim and because it arises out of Allen's same activities in Kansas. Therefore, the Court will focus its personal jurisdiction analysis solely on NexLearn's patent infringement claim.

Due process requires that a defendant have "minimum contacts" with the forum state, "such that the maintenance of the suite does not offend traditional notions of fair play and substantial justice."[14] The United States Supreme Court "has repeatedly cautioned that it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[15] "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."[16] Consistent with these principles, the Federal Circuit recognizes that to show sufficient minimum contacts, a plaintiff must show either specific or general jurisdiction.[17]

Here, NexLearn does not allege general jurisdiction but rather that Allen had minimum contacts with Kansas based on specific jurisdiction. The Federal Circuit employs a three-part test in analyzing specific jurisdiction, in which it determines whether:

---

[14] *Avocent*, 552 F.3d at 1329 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[15] *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (internal quotation mark omitted).

[16] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citations omitted).

[17] *Avocent*, 552 F.3d at 1330 (citations omitted).

> (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. With respect to the last prong, the burden of proof is on the defendant, which must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in *Burger King*.[18]

"The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis."[19]

NexLearn relies on the following four contacts in arguing that Allen has the requisite minimum contacts to subject it to specific personal jurisdiction in Kansas: (1) Allen's emails to Kansas residents promoting the ZebraZapps product; (2) Allen's "highly interactive" website and sales in Kansas; (3) advertisement of the ZebraZapps product in a nationally distributed trade publication; and (4) Allen's business dealings with NexLearn, including the fact that the NDA and EULA designated Kansas as the forum for disputes and as the governing law. The Court will address each of these arguments in turn.

### 1. Emails to NexLearn Employees

According to NexLearn, Allen continually emailed two NexLearn employees in Wichita, Kansas, regarding the ZebraZapps product. These emails contained information about ZebraZapps, informed the employees of any updates to the ZebraZapps software, invited the employees to attend webinars and training sessions on how to use the product, and included a link to the ZebraZapps website. Allen argues that these emails are irrelevant to the jurisdictional analysis.

---

[18] *Id*. at 1332 (citation omitted).

[19] *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (citation omitted).

Allen first points out that five of the six emails relied upon by NexLearn were sent before August 5, 2014—the date the '522 Patent issued. Allen contends that these emails cannot support personal jurisdiction because NexLearn's patent infringement claim could not arise before this date. In support of this argument, Allen relies on another decision from this district—*Gemmy Industries, Corp. v. Chrisha Creations, Ltd*.[20]

In *Gemmy Industries*, the plaintiff claimed that the court had personal jurisdiction over the defendant with regard to the plaintiff's patent infringement claim because the defendant shipped the allegedly infringing products into Kansas.[21] The shipment, however, occurred before the patent issued, and therefore, could not have constituted infringement.[22] The court found that because the plaintiff's claim could not arise from non-infringing conduct, it did not have personal jurisdiction over the defendant.[23]

The Court finds *Gemmy Industries* persuasive here. The Court has personal jurisdiction over NexLearn's patent infringement claim only if the claim arises out of or relates to Allen's contacts with Kansas. Patent infringement occurs when a defendant "makes, uses, offers to sell or sells any patented invention."[24] Even assuming that the emails were an "offer to sell" the patented invention, they are not sufficient to show that Allen purposefully availed itself of Kansas law because they predate the issuance of the '522 Patent.

---

[20] 2004 WL 303209 (D. Kan. Jan. 28, 2004).

[21] *Id*. at *6.

[22] *Id*.

[23] *Id*.

[24] 35 U.S.C. § 271(a).

Allen also argues that the emails, including the single email that post-dates the August 5, 2014 issuance of the '522 Patent, are irrelevant because they were sent in response to NexLearn's employees' expressed interest in ZebraZapps. Allen's President, Martin Lipshutz, states in his affidavit that the six emails sent to the NexLearn employees were sent to everyone on Allen's "lead" database. This database includes anyone who expressed an interest in Allen's products or services by, for example, attending a webinar or class, filling out a form at an Allen trade show, visiting Allen's website, or sending an email to Allen. Allen's marketing team sends periodic emails to everyone in the lead database. According to Allen, the emails to the NexLearn employees are not a sufficient basis for establishing personal jurisdiction because they were expressly provoked by the employee's expressed interest in Allen.

Allen has not identified any Federal Circuit law that directly addresses this issue, but the Federal Circuit has generally held that "[t]o establish specific jurisdiction, a plaintiff must demonstrate that the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."[25] Other district courts have addressed this issue in the context of a plaintiff purchasing an accused infringing product from the defendant and then citing the shipment of that product to the plaintiff in the forum state as a basis for specific personal jurisdiction. In those cases, the district courts have held that "[o]nly those contacts with the forum that were created by the defendant, rather than those manufactured by the unilateral acts of the plaintiff, should be considered for due process purposes."[26]

---

[25] *Avocent*, 552 F.3d at 1330 (internal quotation marks and citations omitted).

[26] *Tech Heads, Inc. v. Desktop Serv. Center, Inc.*, 105 F. Supp. 2d 1142, 1151 (D. Ore. 2000); s*ee, e.g., Ricoh Co., Ltd. v. Asustek Comput., Inc.*, 481 F. Supp. 2d 954, 960 (W.D. Wisc. 2007); *Edberg v. Neogen Corp.*, 17

Here, NexLearn's conduct with regard to the email traffic between it and Allen does not rise to the same level as the plaintiffs described above who attempted to base personal jurisdiction on their own purchase of the defendants' product. But, the only apparent reason the NexLearn employees received the emails from Allen was because the employees unilaterally expressed an interest in ZebraZapps or Allen. Thus, the email contacts are at least somewhat manufactured by NexLearn, and on their own, cannot serve as a basis for specific personal jurisdiction.

### 2. Allen's Website and Sales in Kansas

#### a. Allen's Website

As evidence of Allen's purposefully directed activities, NexLearn points to Allen's website. NexLearn describes this website as "highly interactive . . ., available to any Kansas resident with Internet access." The website allows Kansas residents to purchase ZebraZapps, and when providing credit card information for the purchase, the dropdown menu allows users to select "Kansas" in the billing address section. NexLearn, however, does not cite any case law supporting its argument that such a website is sufficient to confer jurisdiction, and the Federal Circuit has not definitively stated how internet contacts and websites should be treated when evaluating personal jurisdiction. Allen, in turn, urges the Court to adopt the recent decision of the United States District Court for the District of Utah in *Larada Sciences, Inc. v. Skinner*.[27]

---

F. Supp. 2d 104, 112 (D. Conn. 1998); *IO Group, Inc. v. Pivotal, Inc.*, 2004 WL 838164, at *4 (N.D. Cal. April 19, 2004).

[27] -- F.3d --, 2015 WL 7768836 (D. Utah Dec. 2, 2015).

*Larada* is a patent infringement case, where the defendant filed a motion to dismiss for lack of personal jurisdiction.[28] One of the contacts the plaintiff pointed to in favor of jurisdiction was the defendant's interactive website that provided information about and allowed users to purchase the allegedly infringing product.[29] The plaintiff claimed that the website supported jurisdiction, relying heavily on the "sliding scale" framework outlined in a 1997 federal district court decision, *Zippo Manufacturing Co. v. Zippo Dot Com, Inc*.[30] "Under this framework, 'active websites,' which facilitate internet transactions by the repeated and knowing transmission of files, nearly always establish the minimum contacts necessary for personal jurisdiction."[31] "Passive websites," which only provide information, do not provide the minimum contacts necessary for personal jurisdiction.[32] For "interactive websites," which fall in the middle of the two, personal jurisdiction depends on the "level of interactivity and commercial nature of the exchange of information that occurs on the Web site."[33]

The district court declined to adopt the *Zippo* "sliding scale" test, finding that it had never been adopted by the Federal Circuit.[34] Instead, the district court decided to employ the traditional test for jurisdiction.[35] Thus, the court focused on whether any of the defendant's

---

[28] *Id*. at *1.

[29] *Id*. at *3.

[30] *Id*. (citing *Zippo Mfg Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D.Pa. 1997)).

[31] *Id*.

[32] *Id*.

[33] *Id*.

[34] *Id*. at **3-5.

[35] *Id*. at *5.

contacts with Utah via its website gave rise or related to a claim for patent infringement.[36] Specifically, the court looked at whether the website constituted an "offer for sale" under 35 U.S.C. §271(a).[37] The court found that the Federal Circuit has broadly construed the terms "offer for sale," but that there must also be some evidence that that an offer was "actually communicated" to another person.[38] The court further noted that the Federal Circuit has stated that "one important factor for evaluating purposeful availment in the internet context is whether any [forum] residents have ever actually used [the defendant's] website to transact business."[39] The court thus concluded that for the defendant to purposefully avail itself of the Utah forum, the plaintiff must show that the defendant "intentionally targeted Utah users or that Utah users actually interacted with [the] website."[40] Because the plaintiff in *Larada* failed to plead any facts showing that any Utah resident (other than those related to the plaintiff) ever visited the website, the website did not create sufficient minimum contacts with Utah to constitute purposeful availment of the Utah forum.[41]

This Court agrees with Allen that, absent Federal Circuit precedent, a traditional jurisdictional analysis is appropriate to determine whether ZebraZapps.info creates sufficient minimum contacts with Kansas. The Court declines to exercise personal jurisdiction simply because Allen operates an interactive website that allows Kansas users to purchase ZebraZapps

---

[36] *Id*. at *6.

[37] *Id*.

[38] *Id*.

[39] *Id*. (quoting *Trintech Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005)) (internal quotation marks omitted).

[40] *Id*. at *7 (quoting *iAccess, Inc. v. WEBcard Techs., Inc.*, 182 F. Supp. 2d 1183, 1187 (D. Utah 2002)).

[41] *Id*.

from it. Thus, the Court will focus its inquiry on whether any of Allen's contacts with Kansas via its website give rise or relate to Nexlearn's claim for patent infringement.

Here, the only contact NexLearn alleges that arises from the ZebraZapps.info website is that a NexLearn employee, who was a Kansas resident, attempted to purchase ZebraZapps from the website in 2015 but couldn't because the website wouldn't accept his credit card payment. After reaching out to Allen about the problem, Allen gave the employee a free trial access to ZebraZapps. NexLearn has not alleged any facts showing that any Kansas resident, other than those employed by NexLearn, ever visited ZebraZapps.info. And as explained above, the Court cannot consider those contacts that are created or manufactured by the plaintiff for purposes of establishing personal jurisdiction.[42] Thus, even assuming the website constitutes an offer to sell, there is no evidence that Allen made any offer to sell the allegedly infringing product to a Kansas resident via the website. Without such evidence, the Court cannot find that Allen's website provides sufficient minimum contacts to constitute purposeful availment of the Kansas forum.

    b.  Allen's Sales in Kansas

NexLearn contends that Allen's $54,520 revenue in Kansas over the last five years is sufficient to subject it to personal jurisdiction here. Allen, however, has produced evidence showing that all of that revenue is from a single sale that is unrelated to the ZebraZapps product. NexLearn's patent infringement claim does not arise out of this sale, and therefore it cannot be a basis for specific personal jurisdiction.[43]

    **3.**  **Advertisement in a National Trade Publication**

---

[42] *See, e.g., Tech Heads, Inc.*, 105 F. Supp. 2d at 1151.

[43] *See HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 n.4 (Fed. Cir. 1999) ("[T]he test is whether the activity in the forum state is *a* basis for the cause of action.").

NexLearn next argues that Allen purposefully directed its activities at Kansas by belonging to ATD, presenting in at least six ATD conferences, and advertising in a magazine published by ATD. NexLearn, however, fails to connect any of these activities to its patent infringement claim. The national advertisement in ATD's magazine, which NexLearn alleges was sent to Kansas residents, does not reference the ZebraZapps product or the ZebraZapps.info website. It only references Allen and its website. Furthermore, NexLearn does not assert that any of the six conferences Allen participated in took place in Kansas or were attended by Kansas residents. Because NexLearn's patent infringement claim does not arise out of Allen's involvement with ATD, this factor does not support a finding of specific personal jurisdiction.

### 4. Allen's Business Relationship with NexLearn and NDA

Finally, NexLearn argues that Allen purposefully directed its activities at Kansas residents by pursuing a business relationship with NexLearn and subsequently entering into an NDA and EULA with a Kansas choice of law provision and a Kansas forum selection clause. Other than stating that an Allen representative approached its President at a trade show, NexLearn alleges nothing regarding the extent of the parties' business relationship. Allen has stated that the parties communicated, at most, six times through email and telephone calls regarding the NDA and that Allen was never located in Kansas while sending the emails or participating in the telephone calls. These phone calls and emails are not sufficient for the Court to base specific personal jurisdiction.

To the extent the "business relationship" that NexLearn relies upon is the NDA executed by the parties, the NDA also falls short as a basis for specific personal jurisdiction. The NDA was executed by the parties in 2009, and Allen reviewed the SimWriter trial in 2009 as well. By its terms, the NDA expired in 2011, two years after it was executed. The '522 Patent did not

issue until 2014. Because NexLearn's patent infringement claim did not arise until the patent issued, the NDA could not give rise to specific personal jurisdiction for NexLearn's patent infringement claim because its obligations terminated approximately three years before the patent issued.

NexLearn also contends that the Kansas choice of law provision in the NDA and the Kansas forum selection clause in the EULA subject Allen to personal jurisdiction in Kansas. In support of this argument, NexLearn relies on *Sprint Communications Co. v. Mushahada Int'l USA, Inc*.[44] In that case, the plaintiff, Sprint, sued the defendant, Mushahada, for breach of contract.[45] The court found that Mushahada was subject to personal jurisdiction in Kansas based on the following six factors: (1) Mushahada entered into a contract with a Kansas resident; (2) the contract provided for Mushahada's use of telecommunication services on a network located in Kansas; (3) the contract included rates to and from Kansas; (4) in a previous agreement between the parties, there was a Kansas forum selection clause; (5) the contract was governed by a Kansas choice of law provision; and (6) each invoice from Sprint to Mushahada contained a notice that Mushahada was subject to personal jurisdiction in Kansas under subsection 11 of the Kansas long-arm statute, K.S.A. § 60-308(b).[46]

This case is similar to *Sprint* in that Nexlearn is a Kansas resident, the SimWriter trial version that Allen accessed under the NDA was housed on servers located in Kansas, and both the NDA and the EULA contain a Kansas choice of law provision. However, in *Sprint*, the plaintiff sought to assert specific personal jurisdiction over its breach of contract claim, while in

---

[44] 2005 WL 1842845 (D. Kan. July 29, 2005).

[45] *Id*. at *2.

[46] *Id*. at **4-5.

this case, NexLearn relies solely on its patent infringement claim. As previously explained, Allen's actions under the NDA cannot serve as a basis for specific personal jurisdiction over its patent infringement claim because the parties' obligations terminated before the patent issued.[47] Furthermore, there are some factual differences between *Sprint* and this case, namely, that Allen's access to the trial version did not appear to require any type of on-going management services from NexLearn in Kansas, and NexLearn is not attempting to subject Allen to personal jurisdiction under subsections (5) and (11) of the Kansas long-arm statute, K.S.A. § 60-308(b).[48]

Overall, the Court finds that NexLearn has failed to make a prima facie case that Allen purposely directed itself to the Kansas forum and that NexLearn's patent infringement claim arises out of or relates to Allen's activities in Kansas. Because NexLearn has not met its burden with respect to the first two prongs of the Federal Circuit's test for specific personal jurisdiction, the Court need not consider the third prong—whether the assertion of personal jurisdiction is reasonable and fair. The exercise of personal jurisdiction over Allen does not comport with due process. Therefore, the Court grants Allen's motion and dismisses NexLearn's patent infringement claim.

The Court also dismisses NexLearn's breach of contract claim. As previously discussed, NexLearn did not assert its breach of contract claim as an independent basis for subject matter jurisdiction. Instead it asserts that the Court has supplemental jurisdiction over it under 28

---

[47] *See HollyAnne Corp.*, 199 F.3d at 1308 n.4 ("[T]he test is whether the activity in the forum state is *a* basis for the cause of action.").

[48] Subsection (5) subjects an out of state defendant to personal jurisdiction for a cause of action arising out of a contract with a resident of Kansas where at least part of the contract is to be performed in Kansas, and subsection (11) subjects an out of state defendant to personal jurisdiction arising out of a contract with a Kansas resident concerning, among other things, communication services that are managed, operated, or monitored in Kansas, provided the defendant is put on notice that such services may subject the defendant to personal jurisdiction under this section. K.S.A. § 60-308(b).

U.S.C. § 1367. That statute, however, provides that a district court may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction.[49] Furthermore, the decision in whether to decline supplemental jurisdiction rests in the district court's discretion.[50] Because the Court has dismissed NexLearn's patent infringement claim, it declines to exercise supplemental jurisdiction over NexLearn's breach of contract claim.

### B.    Motion to Dismiss for Failure to State a Claim

In the alternative, Allen contends that the Court should dismiss NexLearn's Complaint because it fails to state a claim for which relief may be granted. Specifically, Allen contends that the '522 Patent's claims are directed to patent-ineligible subject matter in violation of 35 U.S.C. § 101. Having granted Allen's motion on jurisdictional grounds, the Court declines to reach this issue.

**IT IS THEREFORE ORDERED** that Defendant Allen Interaction, Inc.'s Motion to Dismiss (Doc. 20) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 4th day of May, 2016.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[49] 28 U.S.C. § 1367(c)(3).

[50] *Busey v. Bd. of Cty. Comm'rs of Shawnee, Kansas*, 163 F. Supp. 2d 1291, 1295 (D. Kan. 2001).