# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOTICE OF ENTRY OF
## JUDGMENT ACCOMPANIED BY OPINION

OPINION FILED AND JUDGMENT ENTERED: 06/19/2017

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and suggestions for rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

Costs are taxed against the appellant in favor of the cross-appellant under Rule 39. The party entitled to costs is provided a bill of costs form and an instruction sheet with this notice.

The parties are encouraged to stipulate to the costs. A bill of costs will be presumed correct in the absence of a timely filed objection.

Costs are payable to the party awarded costs. If costs are awarded to the government, they should be paid to the Treasurer of the United States. Where costs are awarded against the government, payment should be made to the person(s) designated under the governing statutes, the court's orders, and the parties' written settlement agreements. In cases between private parties, payment should be made to counsel for the party awarded costs or, if the party is not represented by counsel, to the party pro se. Payment of costs should not be sent to the court. Costs should be paid promptly.

If the court also imposed monetary sanctions, they are payable to the opposing party unless the court's opinion provides otherwise. Sanctions should be paid in the same way as costs.

Regarding exhibits and visual aids: Your attention is directed Fed. R. App. P. 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

FOR THE COURT

/s/ Peter R. Marksteiner
Peter R. Marksteiner
Clerk of Court


16-2170 - NexLearn, LLC v. Allen Interactions, Inc.
United States District Court for the District of Kansas, Case No. 6:15-cv-01294-EFM-KGG

# United States Court of Appeals for the Federal Circuit

---

**NEXLEARN, LLC,**
*Plaintiff-Appellant*

v.

**ALLEN INTERACTIONS, INC.,**
*Defendant-Cross-Appellant*

---

2016-2170, 2016-2221

---

Appeals from the United States District Court for the District of Kansas in No. 6:15-cv-01294-EFM-KGG, Judge Eric F. Melgren.

---

Decided: June 19, 2017

---

PAUL K. VICKREY, Vitale Vickrey Niro & Gasey, Chicago, IL, argued for plaintiff-appellant.

MARTIN B. PAVANE, Cozen O'Connor, New York, NY, argued for defendant-cross-appellant. Also represented by DARREN SCOTT MOGIL.

---

Before MOORE, SCHALL, and HUGHES, *Circuit Judges*.

MOORE, *Circuit Judge*.

Case 6:15-cv-01294-EFM-KGG   Document 39   Filed 06/19/17   Page 3 of 19
Case: 16-2170     Document: 49-2     Page: 2     Filed: 06/19/2017     (3 of 19)

NexLearn, LLC appeals from the District of Kansas' dismissal of its complaint for lack of personal jurisdiction. For the reasons discussed below, we affirm.

## BACKGROUND

On September 24, 2015, NexLearn filed suit against Allen Interactions, Inc. ("Allen") in the District of Kansas alleging infringement of U.S. Patent No. 8,798,522 ("the '522 patent") and breach of contract. NexLearn alleged in its complaint that on February 10, 2009, Allen and NexLearn entered into a nondisclosure agreement ("NDA") to allow Allen to learn more about NexLearn's social simulation software called SimWriter®. It alleged that pursuant to the NDA, NexLearn provided Allen with a trial version of SimWriter, which Allen accessed "on several occasions, after which Allen stated it was no longer interested in pursuing a deal with NexLearn." J.A. 38. It alleged Allen thereafter developed its social simulation software called ZebraZapps based on information it "learned from its analysis of the confidential demo," giving rise to NexLearn's claims of patent infringement and breach of contract. J.A. 38–39. NexLearn asserted infringement of at least claims 1, 3–9, 11, 12, 14, and 25 of the '522 patent, which is directed to a computer program for social simulation, and asserted breach of the NDA by misusing NexLearn's confidential information. The NDA contains a choice-of-law provision stating Kansas law governs the agreement.

Allen moved to dismiss NexLearn's complaint for lack of personal jurisdiction.[1] Allen is a Minnesota corporation

---

[1] Allen alternatively moved for failure to state a claim upon which relief could be granted. It argued that if it was subject to personal jurisdiction in Kansas, NexLearn's claims should be dismissed because the '522 patent is directed to unpatentable subject matter and

NEXLEARN, LLC v. ALLEN INTERACTIONS, INC.                    3

with its principal place of business in Mendota Heights, Minnesota. It argued it was not subject to specific or general jurisdiction in Kansas due to its limited contacts with the forum, which it argued amounted to a single sale unrelated to its ZebraZapps product and represented less than 1% of its revenue over the past five years. It argued the NDA's choice-of-law provision did not subject it to an action in Kansas because NexLearn's complaint asserted that its breach of contract claim was supplemental to its patent infringement claim, J.A. 36, requiring NexLearn to establish personal jurisdiction over its infringement claim in order to bring its contract claim.

NexLearn opposed Allen's motion and filed additional evidence to support its claim that the court could exercise personal jurisdiction over Allen under a specific jurisdiction theory. NexLearn's president, Dennis Rees, filed a declaration stating Allen agreed to an End-User License Agreement ("EULA") when it accessed the SimWriter trial. The EULA specifies that "any dispute arising out of or related to this Agreement or the Product must be brought exclusively in a court sitting in Wichita, Kansas." J.A. 216. Mr. Rees declared that since launching ZebraZapps in 2011, Allen "continually sent direct emails regarding ZebraZapps to two NexLearn employees." J.A. 187 ¶ 2. He declared that another NexLearn employee was offered a free trial of ZebraZapps after attempting to purchase ZebraZapps from Allen's website without success. He declared Allen specifically targeted Kansas residents by including Kansas in the address selector's dropdown menu on its ZebraZapps website. The declaration summarized Allen's activities with a trade associa-

---

NexLearn failed to allege breach of contract prior to the NDA's expiration in 2011. Because we affirm the district court's holding that it lacked personal jurisdiction over Allen, we do not reach these alternative arguments.

Case 6:15-cv-01294-EFM-KGG   Document 39   Filed 06/19/17   Page 5 of 19
Case: 16-2170   Document: 49-2   Page: 4   Filed: 06/19/2017   (5 of 19)

4                NEXLEARN, LLC v. ALLEN INTERACTIONS, INC.

tion, which disseminated a magazine to Kansas residents that included an advertisement for Allen.

Drawing all reasonable inferences in favor of NexLearn, the district court held that NexLearn failed to allege that Allen had sufficient contacts with Kansas to permit the exercise of specific jurisdiction. It determined the NDA and EULA Kansas choice-of-law and forum-selection provisions were not relevant for specific jurisdiction over NexLearn's patent infringement claim. It held that because five of Allen's six emails to NexLearn employees were sent before the '522 patent issued on August 5, 2014, NexLearn's patent infringement claim could not have arisen out of or related to these emails. It held Allen's sole post-issuance email, as well as its offer of a free trial of ZebraZapps to a NexLearn employee, could not form a basis for exercising jurisdiction because these contacts were manufactured by NexLearn's unilateral acts. The NexLearn employees, it reasoned, received Allen's emails only because they subscribed to Allen's mass emailing list and received a free trial of ZebraZapps only because of a purchase attempt. Regarding Allen's ZebraZapps website, the district court held the website alone, absent evidence of an actual sale, was insufficient to confer specific jurisdiction. It held neither Allen's single sale of an unaccused product to a Kansas resident nor its general advertisement in a trade publication was relevant to NexLearn's patent infringement claim. Because it held it lacked personal jurisdiction over NexLearn's patent infringement claim, and because NexLearn did not assert breach of contract as an independent basis for the district court's subject matter jurisdiction, the district court granted Allen's motion to dismiss.

NexLearn appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

Case 6:15-cv-01294-EFM-KGG   Document 39   Filed 06/19/17   Page 6 of 19
Case: 16-2170   Document: 49-2   Page: 5   Filed: 06/19/2017   (6 of 19)

NEXLEARN, LLC v. ALLEN INTERACTIONS, INC.                   5

DISCUSSION

"Personal jurisdiction is a question of law that we review de novo." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009). We apply Federal Circuit law when reviewing claims "intimately involved with the substance of the patent laws" and the law of the regional circuit when reviewing state law claims. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003). Where, as here, the district court decided personal jurisdiction "based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008). We "accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id.* To make a prima facie showing, we ask "whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics*, 566 F.3d at 1017. The Kansas Supreme Court has interpreted Kansas' long-arm statute to extend jurisdiction to the fullest extent allowed by due process. *Merriman v. Crompton Corp.*, 146 P.3d 162, 179 (Kan. 2006).

Pursuant to 28 U.S.C. § 1367(a), "it is well established—in certain classes of cases—that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). To exercise supplemental jurisdiction, the district court "must first have original jurisdiction over at least one claim in the action." *Id.* at 554.

6                NEXLEARN, LLC v. ALLEN INTERACTIONS, INC.

### A. NexLearn's Patent Infringement Claim

NexLearn alleges that personal jurisdiction exists for its patent infringement claim, the only claim over which it asserts the district court possesses original jurisdiction. A district court can exercise personal jurisdiction over an out-of-state defendant pursuant to either general or specific jurisdiction. Under general jurisdiction, a district court can "hear any and all claims against [out-of-state defendants] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 749 (2014) (citation omitted). Specific jurisdiction instead "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (alteration omitted). To comport with due process, the out-of-state defendant must have "minimum contacts" with the forum State "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). At oral argument, NexLearn stated it alleged both general and specific jurisdiction. Oral arg. at 15:03–16:10. NexLearn did not argue general jurisdiction in its briefing to us or below to the district court. *See* NexLearn Br. 10; J.A. 7 ("NexLearn does not allege general jurisdiction but rather that Allen had minimum contacts with Kansas based on specific jurisdiction."). We thus decline to address general jurisdiction.

To determine whether specific jurisdiction exists we apply a three-part test, in which we determine whether: (1) the defendant purposefully directed its activities to the forum State; (2) the claims arise out of or relate to those activities (collectively, the minimum contacts prong); and (3) the assertion of jurisdiction is reasonable and fair. *Avocent*, 552 F.3d at 1332. We hold that NexLearn failed to allege sufficient minimum contacts with Allen to war-

rant the exercise of specific jurisdiction over its patent infringement claim in Kansas.

1. Contacts Predating '522 Patent Issuance

Many of the contacts NexLearn asserts confer specific jurisdiction over Allen occurred prior to the '522 patent's issuance. Five of the six emails NexLearn cites were sent before August 5, 2014. Allen's actions relating to NexLearn's SimWriter trial—executing the NDA, accessing the trial, and agreeing to the EULA—happened over five years before the '522 patent issued. Various other contacts alleged by NexLearn, including Allen's presentations at trade association conferences in which Kansas residents are members and Allen's advertisement in a trade association magazine, took place before August 5, 2014.

Allen's pre-issuance emails, presentations, and advertisements are not relevant to NexLearn's claim that Allen "infringes at least claims 1, 3–9, 11, 12, 14, and 25 of the '522 patent."[2] *See* J.A. 39. Specific jurisdiction requires that the plaintiff's suit "arises out of or relates to the defendant's contacts with the forum." *Daimler*, 134 S. Ct. at 749 (citation and alterations omitted). If a defendant purposefully derives benefit from his activities within a forum, he may be sued in that forum "for consequences that arise proximately from such activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Allen's

---

[2] Because our review is limited to whether Allen is subject to specific jurisdiction in Kansas, our analysis focuses on whether Allen's pre-issuance contacts are suit-related. We recognize of course that Allen's contacts could be relevant to a general jurisdiction analysis, which permits a court to exercise jurisdiction based on contacts unrelated to the underlying action. *See Walden*, 134 S. Ct. at 1121 n.6.

Case 6:15-cv-01294-EFM-KGG Document 39 Filed 06/19/17 Page 9 of 19
Case: 16-2170 Document: 49-2 Page: 8 Filed: 06/19/2017 (9 of 19)

8   NEXLEARN, LLC v. ALLEN INTERACTIONS, INC.

emails, presentations, and advertisements predating August 5, 2014 cannot constitute infringing acts giving rise to NexLearn's claim because they did not occur "during the term of the patent."[3]  35 U.S.C. § 271(a).  Because NexLearn's infringement claim does not proximately arise from these actions, they are not relevant to our specific jurisdiction inquiry.

To the extent Allen's SimWriter trial activities are "related" to Allen's later development of ZebraZapps, they are too attenuated to form a sufficient contact giving rise to NexLearn's claim of infringement.  NexLearn's patent infringement claim does not arise proximately from these activities which occurred before NexLearn ever had a property right.  This conduct is too far removed from NexLearn's infringement *claim* to be a relevant jurisdictional contact.

The provisions within the NDA and EULA likewise do not render Allen subject to specific jurisdiction in Kansas.  *Burger King* makes clear that the NDA's Kansas choice-of-law provision "standing alone would be insufficient to confer jurisdiction."  105 S. Ct. at 482.  Unlike the facts surrounding the contract in *Burger King*, the NDA in this

---

[3] In some circumstances a defendant's suit-related contacts may extend to activities that occurred long before the plaintiff's cause of action became ripe.  *See, e.g.*, *Burger King*, 471 U.S. at 479–80 (considering the defendant's forum-related contract negotiations in breach of contract suit).  But in no way does NexLearn connect Allen's independent pre-issuance actions with any later infringing conduct to render them relevant.  *See Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297–98 (Fed. Cir. 2009) (holding display of products at a trade show after the patent's issuance and "for the purpose of generating interest in infringing products" was a relevant jurisdictional contact).

Case 6:15-cv-01294-EFM-KGG   Document 39   Filed 06/19/17   Page 10 of 19
Case: 16-2170      Document: 49-2     Page: 9     Filed: 06/19/2017      (10 of 19)

NEXLEARN, LLC v. ALLEN INTERACTIONS, INC.                    9

case does not otherwise evidence Allen's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Id.* The NDA, by its terms, expired in 2011. J.A. 44 ¶ 19. We fail to see how a provision in an expired NDA stating the "Agreement shall be governed by the laws of the State of Kansas" shows reasonable foreseeability of litigation in Kansas over NexLearn's claim of *infringement* of the '522 patent. *See* J.A. 43 ¶ 9. While the EULA does not bear an expiration date, it suffers the same deficiency. The EULA requires that "any dispute arising out of or related to this Agreement or the Product must be brought exclusively in a court sitting in Wichita, Kansas." J.A. 216. This provision only recites forum selection for disputes arising out of the EULA or related to the SimWriter product. It does not specify the forum for disputes relating to infringement of the '522 patent or relating to the ZebraZapps product. Nor does NexLearn's complaint even assert breach of EULA; NexLearn's breach of contract claim rests on breach of the NDA. J.A. 38 ¶ 11 ("Allen's misuse of NexLearn's confidential information constitutes a breach of the NDA.").

We agree with the district court's determination that Allen's contacts predating the issuance of the '522 patent are not relevant contacts for establishing specific jurisdiction over NexLearn's patent infringement claim.

2. Allen's ZebraZapps Website & Contacts Postdating '522 Patent Issuance

NexLearn alleges Allen's operation of an interactive ZebraZapps website creates a substantial connection with its patent infringement claim in Kansas. According to NexLearn, "Allen has specifically targeted Kansas residents in facilitating the purchase of ZebraZapps" on its website by allowing Kansas residents to select "Kansas" from a dropdown menu in the billing-address section when ordering ZebraZapps. J.A. 187–88 ¶ 4. NexLearn

Case 6:15-cv-01294-EFM-KGG   Document 39   Filed 06/19/17   Page 11 of 19
Case: 16-2170      Document: 49-2      Page: 10      Filed: 06/19/2017      (11 of 19)

10   NEXLEARN, LLC v. ALLEN INTERACTIONS, INC.

also identifies two instances in which Allen interacted with NexLearn employees residing in Kansas after the '522 patent issued. On September 9, 2014, Allen sent an email to its email subscribers, which included NexLearn employees, describing new features in ZebraZapps. J.A. 205–07. In July 2015, Allen's Director of Customer Success Services offered a NexLearn employee a free trial of ZebraZapps after she unsuccessfully attempted to purchase the product from Allen's website. J.A. 188 ¶ 5.

We agree with the district court that Allen's Zebra-Zapps website alone does not render it subject to specific jurisdiction in Kansas. *See* J.A. 11–14. We also agree with the district court that the addition of Allen's two contacts with NexLearn employees is insufficient to confer specific jurisdiction over Allen. But we do not agree with the district court's analysis in reaching that conclusion.

We evaluate Allen's website as we would any other contact under a specific jurisdiction theory; for there to be minimum contacts, there must be evidence that Allen purposefully availed itself of Kansas and that NexLearn's claim arises out of or relates to those contacts.[4] The existence of Allen's website, without more, is insufficient to show that Allen has minimum contacts with Kansas. *Cf. Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235 (Fed. Cir. 2010) (holding "this court cannot determine that Abbyy Software purposefully availed itself of the privilege of conducting activities in California by some affirmative act or conduct, and that Nuance's claims arise out of those activities," although Abbyy Software maintained a website that "promotes the

---

[4] We agree with the district court's decision not to apply the *Zippo* "sliding scale" test to assess personal jurisdiction in this case. *See* J.A. 12–13 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

Case 6:15-cv-01294-EFM-KGG   Document 39   Filed 06/19/17   Page 12 of 19
Case: 16-2170   Document: 49-2   Page: 11   Filed: 06/19/2017   (12 of 19)

NEXLEARN, LLC v. ALLEN INTERACTIONS, INC.                11

sale of [the infringing] products in California"); *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008) (not relying on defendant's website as a contact for specific jurisdiction and specifying in the general jurisdiction context, "maintenance of a website is also insufficient to give rise to general jurisdiction over the defendants in the State of Washington, as the website is not directed at customers in Washington and does not appear to have generated any sales in Washington"). We addressed whether a defendant's website gave rise to specific jurisdiction in *Trintec*, in which Trintec alleged Pedre was subject to specific jurisdiction in the District of Columbia based on "Pedre's use of its own interactive website to advertise its products, which Trintec alleges customers in the District of Columbia can use to purchase those products from Pedre." *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005). We explained the difficulty with that specific jurisdiction theory was that "Pedre's website is not directed at customers in the District of Columbia, but instead is available to all customers throughout the country." *Id.* Absent evidence that "any District residents have ever actually used Pedre's website to transact business," Trintec's allegations (together with other evidence of Pedre's contacts) were insufficient to show specific jurisdiction existed. *Id.* at 1281–82.

Allen's inclusion of Kansas in its dropdown of all states on its website is not enough to subject Allen to jurisdiction in Kansas. Allen's address selector may indicate its amenability to selling ZebraZapps to Kansas residents, but it does not establish minimum contacts arising out of or related to the infringement claim. While a Kansas resident *could* purchase ZebraZapps from Allen's website, what is missing is any evidence that such a sale has taken place. Apart from the NexLearn employee that unsuccessfully attempted to purchase ZebraZapps, NexLearn does not even allege that any Kansas resident

Case 6:15-cv-01294-EFM-KGG   Document 39   Filed 06/19/17   Page 13 of 19
Case: 16-2170    Document: 49-2    Page: 12    Filed: 06/19/2017    (13 of 19)

12                NEXLEARN, LLC v. ALLEN INTERACTIONS, INC.

has accessed Allen's ZebraZapps website. There is no evidence that Allen's website facilitated the making, using, offering, or selling of ZebraZapps in Kansas in order to connect Allen's website with NexLearn's patent infringement claim. In this respect, Allen's website is conceptually no different than operating an out-of-state store. That a store would accept payment from a hypothetical out-of-state resident and ship its product there does not create a substantial connection for an infringement claim between the store and the hypothetical resident's forum State. The store's willingness to enter future transactions with out-of-state residents does not, without more, show purposeful availment of each State in which it would, but has not yet, provided or even offered a sale. Something more is needed—whether it be actual sales, targeted advertising, or contractual relationships—to connect the defendant's infringing acts of making, using, offering, or selling its product with the forum State. What is sufficient may vary from case to case, but it cannot be that the mere existence of an interactive website, like the existence of an out-of-state store, is "suit-related conduct . . . creat[ing] a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121.

The addition of Allen's two post-issuance contacts with NexLearn employees do not suffice to render Allen subject to jurisdiction in Kansas. We do not agree with the district court's determination that Allen's sole post-issuance email to NexLearn employees was irrelevant because NexLearn "unilaterally expressed an interest in ZebraZapps or Allen." J.A. 10–11. It is true that when determining whether a defendant has minimum contacts with a forum State, the "unilateral activity of another party or a third person is not an appropriate consideration." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 417 (1984); *see also Walden*, 134 S. Ct. at 1122 ("[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." (quot-

Case 6:15-cv-01294-EFM-KGG   Document 39   Filed 06/19/17   Page 14 of 19
Case: 16-2170    Document: 49-2    Page: 13    Filed: 06/19/2017    (14 of 19)

NEXLEARN, LLC v. ALLEN INTERACTIONS, INC.                              13

ing *Burger King*, 471 U.S. at 475)). But Allen's email to NexLearn employees is not categorically irrelevant simply because the NexLearn employees *solicited* the email. It is undisputed that Allen accepted these employees' requests to receive emails about ZebraZapps and Allen. It is also undisputed that Allen thereafter emailed these NexLearn employees about ZebraZapps and its company. Allen extinguished the unilateral nature of these contacts when it affirmatively responded to these employees' requests by including them on its email subscription list and sending an email to these subscribers.

While Allen's post-issuance email is relevant to our specific jurisdiction inquiry, it is not enough to confer specific jurisdiction. The sole post-issuance email in the record consists of a mass-email advertisement about "new features, updates, and enhancements" made to ZebraZapps. J.A. 205–06. At the end of the email, Allen instructs the recipients of its email to "[l]earn more about the new features and start creating exceptional e-learning solutions with ZebraZapps today" and provides a link to its website. J.A. 207. We have previously held that similar contacts, in which an advertisement was "nationally distributed and not limited to [the forum State]," are "attenuated evidence [that] does not show that the [forum State] was a target market." *Compare Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1347 (Fed. Cir. 2012) (national advertisement mailed twice per year did not show the defendant purposefully availed itself of the privileges of conducting activities within California), *with Quill Corp. v. North Dakota*, 504 U.S. 298, 304, 308 (1992) (defendant's mailing of 24 tons of catalogs and flyers each year into North Dakota subjected it to specific jurisdiction there). While Kansas need not be the only target of Allen's conduct, Allen's mailing of one advertisement to all of its nationwide subscribers does not "create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121. We also question whether NexLearn's

Case 6:15-cv-01294-EFM-KGG   Document 39   Filed 06/19/17   Page 15 of 19
Case: 16-2170      Document: 49-2     Page: 14     Filed: 06/19/2017      (15 of 19)

14                NEXLEARN, LLC v. ALLEN INTERACTIONS, INC.

infringement claim could arise out of or relate to this advertisement because the advertisement does not appear to expressly offer ZebraZapps for sale. "[M]ere advertising and promoting of a product may be nothing more than an invitation for offers." *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001); *see also 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373 (Fed. Cir. 1998) (holding price quotation letters were offers for sale under § 271 where they contained "a description of the allegedly infringing merchandise and the price at which it can be purchased"). Regardless of whether Allen's single email could qualify as an offer for sale under § 271(a), it is insufficient to establish minimum contacts with Kansas in this case.

For similar reasons, we do not agree with the district court's determination that Allen's offer of a free ZebraZapps trial to a NexLearn employee is irrelevant to our specific jurisdiction inquiry. *See* J.A. 14 (explaining it "cannot consider those contacts that are created or manufactured by the plaintiff for purposes of establishing personal jurisdiction"). NexLearn did not unilaterally cause this contact to arise; Allen purposefully directed activities to Kansas when it offered the NexLearn employee the free trial. So long as Allen's offer of the free ZebraZapps trial qualifies as or relates to a make, use, offer, or sale of an accused product under § 271(a), we fail to see why this contact is irrelevant to NexLearn's patent infringement claim simply because the recipient was a NexLearn employee. If Allen's offer of the free trial constituted or gave rise to an act of infringement, it is immaterial whether or not the offer was made to an employee of the patent holder. This contact is jurisdictionally relevant to NexLearn's patent infringement claim.

As with Allen's single post-issuance email to NexLearn employees, however, Allen's single offer of a free ZebraZapps trial is too attenuated to establish mini-

Case 6:15-cv-01294-EFM-KGG   Document 39   Filed 06/19/17   Page 16 of 19
Case: 16-2170     Document: 49-2     Page: 15     Filed: 06/19/2017

(16 of 19)

NEXLEARN, LLC v. ALLEN INTERACTIONS, INC.                15

mum contacts with Kansas. In light of the "relationship among the defendant, the forum, and the litigation," Allen's single offer is too insignificant to justify haling it into court in Kansas. *See Walden*, 134 S. Ct. at 1121 (alteration omitted); *cf. J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 888–89 (2011) (Breyer, J., concurring) ("[T]he Court, in separate opinions, has strongly suggested a single sale of a product in a State does not constitute an adequate basis for asserting specific jurisdiction over an out-of-state defendant . . . ."). It does not create a substantial connection with either Kansas or NexLearn's cause of action. We have previously held that a defendant's contacts with a forum State, similar to those here, were insufficient to establish minimum contacts. In *Maynard*, for example, we held Maynard failed to allege Philadelphia Cervical was subject to specific jurisdiction in Kentucky where Philadelphia Cervical "(1) sent a letter to Maynard in Kentucky dated December 1, 1992, (2) maintained an Internet web page, and (3) sold a Philadelphia Cervical product to Maynard in Kentucky." *See Maynard v. Phila. Cervical Collar Co.*, 18 F. App'x 814, 816–17 (Fed. Cir. 2001). In *Katz*, we explained that the defendant's single sale to the plaintiff, among the thousands of containers it sold in a different State, did not subject the defendant to specific jurisdiction. *Katz v. Ladd Uniform Co.*, 975 F.2d 869 (Fed. Cir. 1992) (unpublished) ("Katz's isolated mail-order requests were for the supply of three gas containers, with a total sales value of $26.85. . . . Ladd's isolated action did not satisfy the 'minimum contacts' that are necessary to meet the requirements of due process."). Here, Allen's isolated offer of a free trial to a Kansas resident is insufficient to establish a substantial connection with Kansas to warrant the exercise of specific jurisdiction.

Allen's website together with its contacts with NexLearn create only an "attenuated affiliation" with Kansas as opposed to a "substantial connection" with the

Case 6:15-cv-01294-EFM-KGG   Document 39   Filed 06/19/17   Page 17 of 19
Case: 16-2170     Document: 49-2     Page: 16     Filed: 06/19/2017     (17 of 19)

16 NEXLEARN, LLC v. ALLEN INTERACTIONS, INC.

forum State as required for specific jurisdiction. *See Burger King*, 471 U.S. at 475. We thus affirm the district court's dismissal of NexLearn's patent infringement claim for lack of personal jurisdiction.

### B.  NexLearn's Breach of Contract Claim

We affirm the district court's dismissal of NexLearn's remaining claim for breach of contract for lack of subject matter jurisdiction.  NexLearn's complaint asserts the District of Kansas has original subject matter jurisdiction over only its patent infringement claim, resting its breach of contract claim on "supplemental jurisdiction pursuant to 28 U.S.C. § 1367."  J.A. 36 ¶ 1.  While neither party disputes that a claim for patent infringement falls within the district court's subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), the district court's dismissal of that claim for lack of personal jurisdiction left no remaining claim over which the district court could exercise original subject matter jurisdiction. *See* J.A. 17.  A district court cannot exercise supplemental jurisdiction over a claim where original subject matter jurisdiction does not exist.  28 U.S.C. § 1367(a).  Because we affirm the district court's dismissal of NexLearn's patent infringement claim for lack of personal jurisdiction, we affirm the district court's dismissal of NexLearn's supplemental claim for breach of contract.

### CONCLUSION

For the reasons discussed above, we affirm the district court's dismissal of NexLearn's complaint.

**AFFIRMED**

### COSTS

Costs to Allen.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

*Questions and Answers*

**Petitions for Rehearing (Fed. Cir. R. 40)**
**and**
**Petitions for Hearing or Rehearing En Banc (Fed. Cir. R. 35)**

---

*Q. When is a petition for rehearing appropriate?*

A. Petitions for panel rehearing are rarely successful because they most often fail to articulate sufficient grounds upon which to grant them. For example, a petition for panel rehearing should not be used to reargue issues already briefed and orally argued; if a party failed to persuade the court on an issue in the first instance, a petition for panel rehearing should not be used as an attempt to get a second "bite at the apple." This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36.  Such dispositions are entered if the court determines the judgment of the trial court is based on findings that are not clearly erroneous, the evidence supporting the jury verdict is sufficient, the record supports the trial court's ruling, the decision of the administrative agency warrants affirmance under the appropriate standard of review, or the judgment or decision is without an error of law.

*Q. When is a petition for hearing or rehearing en banc appropriate?*

A. En banc decisions are extraordinary occurrences. To properly answer the question, one must first understand the responsibility of a three-judge merits panel of the court. The panel is charged with deciding individual appeals according to the law of the circuit as established in the court's precedential opinions. While each merits panel is empowered to enter precedential opinions, the ultimate duty of the court en banc is to set forth the law of the Federal Circuit, which merit panels are obliged to follow.

Thus, as a usual prerequisite, a merits panel of the court must have entered a precedential opinion in support of its judgment for a suggestion for rehearing en banc to be appropriate. In addition, the party seeking rehearing en banc must show that either the merits panel has failed to follow identifiable decisions of the U.S. Supreme Court or Federal Circuit precedential opinions or that the merits panel has followed circuit precedent, which the party seeks to have overruled by the court en banc.

*Q. How frequently are petitions for rehearing granted by merits panels or petitions for rehearing en banc accepted by the court?*

A. The data regarding petitions for rehearing since 1982 shows that merits panels granted some relief in only three percent of the more than 1900 petitions filed. The relief granted usually involved only minor corrections of factual misstatements, rarely resulting in a change of outcome in the decision.

En banc petitions were accepted less frequently, in only 16 of more than 1100 requests. Historically, the court itself initiated en banc review in more than half (21 of 37) of the very few appeals decided en banc since 1982. This sua sponte, en banc review is a by-product of the court's practice of circulating every precedential panel decision to all the judges of the Federal Circuit before it is published. No count is kept of sua sponte, en banc polls that fail to carry enough judges, but one of the reasons that virtually all of the more than 1100 petitions made by the parties since 1982 have been declined is that the court itself has already implicitly approved the precedential opinions before they are filed by the merits panel.

*Q. Is it necessary to have filed either of these petitions before filing a petition for certiorari in the U.S. Supreme Court?*

A. No. All that is needed is a final judgment of the Court of Appeals. As a matter of interest, very few petitions for certiorari from Federal Circuit decisions are granted. Since 1982, the U.S. Supreme Court has granted certiorari in only 31 appeals heard in the Federal Circuit.  Almost 1000 petitions for certiorari have been filed in that period.

October 20, 2016

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

# INFORMATION SHEET

# FILING A PETITION FOR A WRIT OF CERTIORARI

There is no automatic right of appeal to the Supreme Court of the United States from judgments of the Federal Circuit. You must file a petition for a writ of certiorari which the Supreme Court will grant only when there are compelling reasons. (See Rule 10 of the Rules of the Supreme Court of the United States, hereinafter called Rules.)

**Time.** The petition must be filed in the Supreme Court of the United States within 90 days of the entry of judgment in this Court or within 90 days of the denial of a timely petition for rehearing. The judgment is entered on the day the Federal Circuit issues a final decision in your case. [The time does not run from the issuance of the mandate, which has no effect on the right to petition.] (See Rule 13 of the Rules.)

**Fees.** Either the $300 docketing fee or a motion for leave to proceed in forma pauperis with an affidavit in support thereof must accompany the petition. (See Rules 38 and 39.)

**Authorized Filer.** The petition must be filed by a member of the bar of the Supreme Court of the United States or by the petitioner representing himself or herself.

**Format of a Petition.** The Rules are very specific about the order of the required information and should be consulted before you start drafting your petition. (See Rule 14.) Rules 33 and 34 should be consulted regarding type size and font, paper size, paper weight, margins, page limits, cover, etc.

**Number of Copies.** Forty copies of a petition must be filed unless the petitioner is proceeding in forma pauperis, in which case an original and ten copies of the petition for writ of certiorari and of the motion for leave to proceed in forma pauperis. (See Rule 12.)

**Where to File.** You must file your documents at the Supreme Court.

**Clerk**
**Supreme Court of the United States**
**1 First Street, NE**
**Washington, DC 20543**
**(202) 479-3000**

No documents are filed at the Federal Circuit and the Federal Circuit provides no information to the Supreme Court unless the Supreme Court asks for the information.

**Access to the Rules.** The current rules can be found in Title 28 of the United States Code Annotated and other legal publications available in many public libraries.

Revised December 16, 1999